**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee,**

v.

**William W. GODSHALL and Martha D. Godshall, Appellants.**

**No. 76–2294.**

United States Court of Appeals, Fourth Circuit.

Argued March 17, 1977.

Decided July 8, 1977.

Charles W. Wofford, Greenville, S. C. (Malcolm E. Rentz, Columbia, S. C., Wyche, Burgess, Freeman & Parham, Greenville, S. C., Rentz & DeBerry, Columbia, S. C., on brief), for appellants.

Charles W. Knowlton, Columbia, S. C. (George S. King, Jr., Boyd, Knowlton, Tate & Finlay, Columbia, S. C., Myers N. Fisher, J. Craig Gilliland, Washington, D. C., on brief), for appellee.

Before WINTER and CRAVEN,* Circuit Judges, and FIELD, Senior Circuit Judge.

WINTER, Circuit Judge:

In a suit on a note, Federal Deposit Insurance Corporation (FDIC) obtained a judgment for $65,500.00 against defendants, William W. and Martha D. Godshall. Defendants agreed that that sum was due on the note, but they assert that the district court lacked subject matter jurisdiction under 12 U.S.C. § 1819. We disagree. We affirm the judgment.

## I.

The note on which suit was brought was executed and delivered by defendants to American Bank & Trust Company (Bank). To show how FDIC became the holder and to set forth the facts relating to the question concerning the district court's jurisdiction, it is necessary to state the following:

Bank was closed on September 20, 1974 by order of the South Carolina State Board of Bank Control upon its determination that Bank was unable to meet the demands of its depositors. Bank's deposits were insured by FDIC, a corporation created by and existing under an Act of Congress,[1] having the primary function of "stabilizing or promoting the stability of banks" by providing deposit insurance. *Doherty v. United States*, 94 F.2d 495, 497 (8 Cir.), *cert. denied*, 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1117 (1938). The State Board of Bank Control tendered to FDIC appointment as receiver for Bank.[2] FDIC accepted the tender, became receiver for Bank, and began performance of its duties.[3]

To meet the demands of Bank's depositors, and to prevent the disruption of vital business, FDIC immediately took the following steps: FDIC, as receiver, sold certain assets of Bank to Southern Bank & Trust Co. (Southern). These assets consisted of cash, currency, receivables due from other banks, government securities, and other items of established value. In return, Southern agreed to assume nearly all of Bank's liabilities (including obligations to depositors), and to reopen Bank's offices under Southern's name. FDIC, as receiver,

---

\* The opinion in this case was not prepared until after Judge Craven's death. He, however, had voted to affirm the judgment from which the appeal was taken.

1. *See* the Federal Deposit Insurance Corporation Act, 12 U.S.C. §§ 1811, *et seq.*

2. The tender was made pursuant to S.C.Code § 8–273 (1962), which provides that

[t]he Federal Deposit Insurance Corporation may, with the approval of the State Board of Bank Control, be and act without bond as receiver or liquidator of any banking institution the deposits in which are to any extent insured by the Corporation and which shall have been closed on account of inability to meet the demands of its depositors.

The State Board of Bank Control may, in the event of such closing, tender to the Corporation the appointment as receiver or liquidator of such banking institution, and, if the Corporation accepts such appointment, it shall have all the powers and privileges provided by the laws of this State with respect to a receiver or liquidator of a banking institution, its depositors and other creditors and be subject to all the duties of such receiver or liquidator.

Since (as the text notes) Bank's deposits were insured by FDIC, and Bank was closed on account of inability to meet the demands of its depositors, the tender was fully authorized.

3. Although primarily an insurer, FDIC is also empowered to act as receiver of an insured state bank, if such bank is "closed . . . on account of inability to meet the demands of its depositors, . . . [and an] appointment [to act as receiver] is tendered by the authority having supervision of such bank and is authorized or permitted by state law." 12 U.S.C. § 1821(e).

agreed to pay Southern cash in an amount equal to the difference between the value of the assets Southern purchased and the amount of the liabilities Southern assumed. To raise that cash, FDIC, as receiver, sold the remainder of Bank's assets to itself, in its general corporate capacity, and FDIC, in its general corporate capacity, paid itself, as receiver, the cash needed to consummate the original transaction with Southern.[4] FDIC also agreed that if, in the liquidation of the assets it purchased, it realized more than the purchase price, the costs of liquidation, reimbursement for another potential liability it had assumed, and a reasonable return, it would pay such "excess recoveries" to itself, as receiver.

The note given by defendants to Bank was among the assets which FDIC purchased from itself, as receiver. In order to replenish the cash it had expended,[5] FDIC undertook collection of the assets it had acquired. *Inter alia*, it brought suit upon the note in the district court. Despite a contrary initial ruling, the district court found that it had jurisdiction over the claim and granted summary judgment in favor of FDIC in the amount that the parties agree was due. Defendants appeal, asserting only that the district court lacked subject matter jurisdiction.

## II.

Defendants rely primarily upon 12 U.S.C. § 1819, the statute which governs FDIC's ability to sue and be sued in federal court. The statute, after conferring upon FDIC the power to sue and be sued, complain and

defend in any court of law and equity, provides:

> All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof without regard to the amount in controversy . . . except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

12 U.S.C. § 1819. Defendants argue that by bringing suit upon the note (1) FDIC continues to act as receiver of Bank, a state bank, and (2) FDIC raises legal issues which pertain solely to the "rights or obligations" of Bank's depositors, creditors or stockholders under state law. Extrapolating from the language of § 1819, defendants conclude that the action upon the note does not arise under the laws of the United States and must be brought in state court. We disagree.

In the instant lawsuit, FDIC acted in its general corporate capacity and not as receiver for Bank. This conclusion flows from an analysis of the purchase agreement, whereby FDIC bought the note. The agreement clearly indicates that FDIC acquired the note in its corporate capacity, or as an ordinary purchaser for value.[6]

---

4. FDIC is expressly empowered to purchase assets from the receivers of insured state banks, when such banks are closed because of inability to meet the demands of depositors. 12 U.S.C. § 1823(d). The sale must be approved by the appropriate state authority or court. FDIC refers to these transactions as "special purchases." A "special purchase" is traditionally used to generate cash for the receivership (which, in turn, is used to fully compensate a solvent bank for assuming the liabilities of the distressed bank.) *See* Annual Report of the FDIC for the Year Ending December 31, 1958, at pp. 88–89.

Ordinarily, the assets are purchased from a third party acting as the distressed bank's receiver. However, a situation may arise

where FDIC finds itself on both sides of the transaction. This is because FDIC is authorized and does act as receiver for insured state banks. 12 U.S.C. § 1821(e), discussed in note 2, *supra*. When this occurs, FDIC sells the assets as a receiver and purchases them as a corporation.

5. According to the affidavit of Donald J. Lubitz, FDIC Liquidator-at-Large, FDIC expended some $53,600,000.00 in the transactions described in the text.

6. The agreement recited that it was by and between "Federal Deposit Insurance Corporation, Receiver of [Bank] (the 'Receiver'), and the Federal Deposit Insurance Corporation, a

FDIC's capacity as purchaser does not change merely because FDIC, as receiver for Bank, also acted as seller. The federal courts have recognized that FDIC may often act in two capacities simultaneously: as receiver of a bank and as an insurance corporation. *Freeling v. Sebring*, 296 F.2d 244, 245 (10 Cir. 1961). Under the facts in the instant case, the dichotomy is clear. FDIC sold the note as receiver for Bank, but purchased it in its general corporate capacity.

Quite apart from the purchase agreement, there are other indications that FDIC, as plaintiff, does not act as receiver for Bank. As an example, any recovery upon the note would flow to FDIC's corporate treasury and not to the receivership estate. The latter result would have been dictated had FDIC continued to function as receiver when the suit was filed.[7] In sum, therefore, FDIC cannot be said to act as receiver in this context.[8]

Turning to the second argument advanced by the defendants, we conclude that the instant lawsuit, taken to collect the note, does not raise issues concerning *only* the "rights or obligations" of Bank's depositors, creditors or stockholders under state law. The financial impact resulting from the success or failure of the lawsuit is almost solely on FDIC. If no recovery were realized, FDIC would bear the entire loss of what it paid for the note; Bank's depositors, creditors and stockholders would be unaffected. Only if recovery is realized and it, together with all other recoveries, amounts to an "excess recovery" would Bank's creditors and stockholders be benefitted. But even then, the benefit to them would be secondary to the benefit to FDIC.

### III.

For these reasons, we think that defendants have failed to establish the two requirements for ousting federal jurisdiction under § 1819: (1) that FDIC, by bringing the instant lawsuit, continues to act as receiver of Bank, and (2) that the lawsuit raises questions pertaining solely to the "rights or obligations" of Bank's depositors, creditors or stockholders under state law. The district court correctly ruled that it had jurisdiction to consider the claim.

AFFIRMED.

---

corporation created and existing under an Act of Congress . . . (the 'Corporation')." The agreement was signed by FDIC as "Receiver of American Bank & Trust" and by FDIC, without designation. The operative language of the agreement was "[t]he Receiver does hereby sell . . . to the Corporation all of the Receiver's right, title and interest in certain assets not purchased by [Southern]." The note in suit was an asset of Bank not purchased by Southern.

7. Despite the fact that any recovery would flow directly to FDIC's corporate treasury, defendants continue to insist that the receivership estate would derive a benefit from the lawsuit. Defendants hypothesize that a successful lawsuit, coupled with the liquidation of all other acquired assets, would produce "excess recovery." Even if we assume the likelihood of any payback, we think that the "excess recovery" provision merely reflects a recognition that FDIC was not intended to operate as a profit-making venture but as a public service. Therefore, we do not believe that the "excess recovery" provision has any appreciable effect on the characterization of this lawsuit. The suit continues to be for the benefit of FDIC as a corporation and not as receiver for Bank.

8. We note that one federal district court has recently addressed this issue; *i. e.*, whether FDIC, by bringing such an action, is continuing to act as receiver for an insured state bank. *FDIC v. Ashley*, 408 F.Supp. 591 (E.D.Mich.), *appeal docketed*, No. 76–2416 (6 Cir. 1976). The *Ashley* court concluded that FDIC continues to act as a receiver. We are not persuaded and decline to follow its reasoning.