**FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized and existing under the laws of the United States of America, Plaintiff-Appellant,**

v.

**W. Jerome ASHLEY, James P. Buhai, John Cooley, Richard Jones, Joseph Kristufek, Robert Verhelle and William Verhelle, Defendants-Appellees.**

No. 76–2416.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1978.

Decided Oct. 4, 1978.

Larry E. Powe, Daner, Freeman, McKenzie & Matthews, P. C., Kenneth E. Scherer, Mount Clemens, Mich., for plaintiff-appellant.

Robert G. Russell, Kerr, Wattles & Russell, Detroit, Mich., for Buhai & Jones.

Leonard A. Wilcox, Jr., Eames, Petrillo & Wilcox, Henry J. Mittelstaedt, III, Detroit, Mich., for Kristufek.

Walter J. Murray, Murray & Murray, Southfield, Mich., for Ashley & Cooley.

Richard D. Rohr, George G. Kemsley, Bodman, Longley, Bogle & Dahling, Detroit, Mich., for both Verhelles.

Albert E. Phillips, Phillips, Hartland & Mozley, Atlanta, Ga., James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for amicus Fidelity Deposit Co. of Md.

Before EDWARDS and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Plaintiff-appellant Federal Deposit Insurance Corporation (FDIC), which had been appointed receiver of Tri-City Bank of Warren, Michigan, filed a complaint in the federal district court against defendants-appellees, who were directors of Tri-City Bank, seeking damages for corporate mismanagement and waste. Appellant FDIC alleged that the district court had jurisdiction pursuant to 12 U.S.C. § 1819. The district court, however, issued an order to show cause why the case should not be dismissed for lack of jurisdiction. After appellant FDIC and appellee Kristufek filed responses to the order and a hearing was held, the district judge entered an opinion and order dismissing the action for lack of jurisdiction. Appellant FDIC has perfected this appeal. We reverse.

I

The Tri-City Bank of Warren was a Michigan banking corporation that experienced financial problems. Upon petition of the Commissioner of the Michigan Financial Institutions Bureau, the Macomb County, Michigan Circuit Court, on September 27, 1974, appointed appellant FDIC as receiver of the Tri-City Bank. As receiver, appellant FDIC took title to the bank's assets, business, and property.

The following day, September 28, 1974, the Michigan National Bank of Macomb and appellant FDIC entered into, with the approval of the Macomb County Circuit Court, an agreement. Under this "assignment agreement," the Michigan National Bank of Macomb assumed all the deposit liabilities and purchased the "acceptable assets" of the Tri-City Bank. "Acceptable assets" were defined in the agreement as cash, amounts due from other banks, United States Government securities, and the furniture, fixtures, equipment, and leasehold improvements formerly owned by the Tri-City Bank. It was stipulated in the agreement that the "acceptable assets" were to equal $1,158,000 less than the deposit liabilities assumed by the Michigan National Bank of Macomb; the difference was the purchase price for the "acceptable assets." The "unacceptable assets" were defined to include all loans and causes of action against Tri-City directors for breaches of their fiduciary duties, and the FDIC as receiver assigned to the FDIC in its corporate capacity those "unacceptable assets" for $10,456,172.47.[1] In addition, the FDIC agreed that if it recovered more monies for the "unacceptable assets" than it paid, the FDIC as corporate assignee would not retain the excess but would return that excess to the FDIC as receiver.

Appellant FDIC subsequently brought in the federal district court this claim of corporate mismanagement and waste against appellee directors. The only basis for federal court jurisdiction, which appellant FDIC did invoke, was a special statute governing the FDIC, 12 U.S.C. § 1819. That statute provides in pertinent part:

[The FDIC] shall have power—

Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. *All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States*

*district courts shall have original jurisdiction thereof, without regard to the amount in controversy;* and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, *except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States. . . .* (emphasis supplied)

As the district court recognized, this statute framed the basic issue in the present case. If the FDIC was, first, acting as a receiver of a State Bank and, secondly, asserting claims involving only the rights of the State Bank's depositors, creditors, and stockholders and of the State Bank, there would be no federal court jurisdiction. If, on the other hand, the FDIC was acting as an assignee of certain assets of Tri-City Bank and thus asserting rights of its own, then there would be federal jurisdiction.

The district judge held that there was no federal court jurisdiction because the FDIC was acting as a receiver, asserting the rights of depositors, creditors, and stockholders of Tri-City Bank and of Tri-City Bank, despite what appeared to be a *bona fide* assignment of assets to the FDIC in its corporate capacity. The district judge stated that the substance and not the form of the assignment transaction, viewing the real function of the FDIC in bringing suit against appellees, should dictate whether the statute, 12 U.S.C. § 1819, conferred jurisdiction in the present case. According to the district judge, the assignment from the FDIC as receiver to the FDIC as corpo-

---

1. This was the adjusted price. The parties agreed that the FDIC would pay the necessary amount to bring the value of the assets transferred to the Michigan National Bank of Ma-

comb to a total equal to $1,158,000 less the deposit liabilities assumed. Originally the price was calculated to be $10,631,248.02.

ration was made to facilitate the collection of assets, a function traditionally a part of the receiver's role. The district judge also noted that the assignment of Tri-City Bank's "unacceptable assets" to the FDIC was not unconditional because the assignment agreement provided that any amounts received in excess of the payment for the "unacceptable assets" would be turned over to the FDIC as receiver.

On appeal to this Court, appellant FDIC contends (1) that the assignment for value of the "unacceptable assets" (which included causes of action against the Bank's directors) to the FDIC in its corporate capacity was a *bona fide* transfer, (2) that the FDIC, when suing the appellee directors, therefore was acting not as a receiver asserting the rights of Tri-City Bank and the rights of Tri-City's depositors, creditors, and shareholders but was acting in its own corporate capacity asserting its own rights, obtained in the assignment to it of the "unacceptable assets,"[2] and (3) that because the FDIC was acting in its own corporate capacity asserting its rights there was federal court jurisdiction under 12 U.S.C. § 1819. We agree.

## II

■ The district judge stated in her opinion that the transfer of the "unacceptable assets" to the FDIC in its corporate capacity was *not* a sham. We are in complete agreement with that finding. In fact, we conclude, after examining the record, that the price paid by the FDIC—$10,456,172.47 —to obtain the "unacceptable assets" from the FDIC in its receivership capacity was about what parties negotiating at arm's-length would have agreed upon as fair consideration for the value of the "unacceptable assets." Consequently, there were but two objections that the district judge could and did have to the assignment for good

value of the "unacceptable assets" to the FDIC in its corporate capacity such as to justify her conclusion that there was no federal court jurisdiction under 12 U.S.C. § 1819 because the FDIC was acting only as a receiver of a State Bank and not as an assignee of assets asserting its own rights obtained in the assignment. Those objections are, (1) that the FDIC acted as both the seller and a purchaser in the assignment agreement, and (2) that under the assignment agreement the FDIC would not retain amounts obtained in excess of the value it paid for the "unacceptable assets." Our analysis of these objections, however, leads us to conclude that neither objection can serve to justify the district judge's conclusion that there was not federal court jurisdiction in this case.

■ With respect to the district judge's first objection, that the FDIC acted as both the seller and a purchaser, we conclude that under the statutory scheme of the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.*, that "FDIC's capacity as purchaser does not change merely because FDIC, as receiver for [the State] Bank, also acted as seller." *Federal Deposit Insurance Corp. v. Godshall,* 558 F.2d 220, 223 (4th Cir. 1976). Under the Federal Deposit Insurance Act, the "FDIC may often act in two capacities simultaneously: as receiver of a bank and as an insurance corporation." *Federal Deposit Insurance Corp. v. Godshall, supra,* 558 F.2d at 223. See *Federal Deposit Insurance Corp. v. Boone,* 361 F.Supp. 133 (W.D.Okl.1972). A review of the relevant provisions of the Federal Deposit Insurance Act supports this conclusion.

■ The FDIC was authorized by 12 U.S.C. § 1821(e) to accept the appointment as receiver of Tri-City Bank with the power

---

**2.** The district court's statement that appellant FDIC does not contend that the claims it makes in this case are other than those involving only the rights or obligations of Tri-City and of Tri-City's depositors, creditors, and shareholders is not supported by the record. Although the FDIC did make reference in its complaint to its

role as liquidator of Tri-City Bank, the FDIC has maintained throughout the litigation that its rights to prosecute the claims against appellees is based on the assignment agreement which resulted in the FDIC owning the claims against the appellee directors.

to sell the assets of the State Bank.[3] 12 U.S.C. § 1821(e) provides:

> Whenever any insured State bank (except a District bank) shall have been closed by action of its board of directors or by the authority having supervision of such bank, as the case may be, on account of inability to meet the demands of its depositors, the Corporation shall accept appointment as receiver thereof, if such appointment is tendered by the authority having supervision of such bank and is authorized or permitted by State law. With respect to any such insured State bank, the Corporation as such receiver shall possess all the rights, powers and privileges granted by State law to a receiver of a State bank.

Under relevant state law in this case, the rights of the FDIC as receiver were enumerated in M.C.L.A. 487.552, which provides in pertinent part:

> Subject to the approval of the appointing court a receiver shall: . . . (c) Sell any and all real and personal property.

In the present case, the Macomb County Circuit Court, after having appointed the FDIC as receiver of the Tri-City Bank, issued an order approving the sale of Tri-City Bank's "acceptable assets" to the Michigan National Bank for that Bank's assumption of Tri-City's deposit liabilities of greater value and the sale of Tri-City Bank's "unacceptable assets" to the FDIC for $10,456,-172.47.

■ The FDIC was authorized by 12 U.S.C. § 1823(e) to act in its corporate capacity to purchase certain assets of a closed bank, even when the FDIC itself acts as the receiver, when another insured bank purchases assets and assumes liabilities of the closed bank. 12 U.S.C. § 1823(e) provides in pertinent part:

> (e) *Whenever in the judgment of the Board of Directors such action will reduce the risk or avert a threatened loss to the Corporation and will facilitate a merger or consolidation of an insured bank with another insured bank, or will facilitate the sale of the assets of an open or closed insured bank to and assumption of its liabilities by another insured bank,* the Corporation may, upon such terms and conditions as it may determine, make loans secured in whole or in part by assets of an open or closed insured bank, which loans may be in subordination to the rights of depositors and other creditors, or *the Corporation may purchase any such assets* or may guarantee any other insured bank against loss by reason of its assuming the liabilities and purchasing the assets of an open or closed insured bank. Any insured national bank or District bank, or *the Corporation as receiver* thereof, *is authorized to contract for such sales* or loans and to pledge any assets of the bank to secure such loans. (emphasis supplied)

This statute fully authorized in this case the transaction whereby, from the FDIC as receiver of Tri-City Bank, the Michigan National Bank assumed the deposit liabilities and purchased certain assets and the FDIC purchased the remaining assets.[4]

The tenth Circuit appears to be in complete agreement with our analysis of these provisions of the Federal Deposit Insurance Act. In *Freeling v. Sebring,* 296 F.2d 244, 245 (10th Cir. 1961), it was stated:

> Congress thus has authorized the FDIC to act simultaneously in the dual capacity of a federal insurer and as a state receiver and has discerningly provided for federal jurisdiction of claims against it as a federal insurer, while denying federal juris-

---

**3.** Under Michigan law, the Commissioner of the Michigan Financial Institutions Bureau was required to request the Circuit Court to appoint the FDIC as the receiver if, as in this case, the insolvent bank's deposits were insured to any extent by the FDIC. M.C.L.A. 487.551.

**4.** Under 12 U.S.C. § 1823(d), receivers may offer to the FDIC the assets of a closed bank if

the state authority approves the sale. That statute provides in pertinent part that:

> Receivers as liquidators of insured banks closed on account of inability to meet the demands of their depositors shall be entitled to offer the assets of such banks for sale to the Corporation . . . upon receiving permission from the appropriate State authority.

diction over claims arising out of its activities as a state agent.[5]

Even stronger support for our decision is to be found in a Fourth Circuit case very similar to the one before us. In *Federal Deposit Insurance Corp. v. Godshall, supra,* 558 F.2d 220, the FDIC brought suit in federal district court on a promissory note against the defendant makers. The note had been executed and delivered by the defendant makers to the American Bank & Trust Company, a state bank. American Bank & Trust Company was subsequently closed by order of the South Carolina State Board of Bank Control upon its determination that the American Bank was unable to meet the demands of its depositors. Because American Bank & Trust Company's deposits were insured by the FDIC, the State Board tendered to the FDIC appointment as receiver for the American Bank, which appointment the FDIC accepted. The FDIC, as receiver, then sold to Southern Bank & Trust Co. the cash, currency, receivables from other banks, government securities, and other items of established value. In return, Southern Bank agreed to assume American Bank's deposit liabilities and to reopen American Bank's offices under Southern Bank's name. FDIC, as receiver, sold the remaining American Bank assets to itself, in its general corporate capacity. The FDIC also agreed that if, by the liquidation of the assets it purchased, it realized more than the price it paid for the assets, plus the costs of liquidating the assets and a reasonable return, it would pay that excess to itself as receiver. Defendants claimed that there was not federal jurisdiction under 12 U.S.C. § 1819, but the

Fourth Circuit held that there was, stating that the FDIC in its corporate capacity had acquired, as an ordinary purchaser for value, the note upon which it was suing and that the FDIC was therefore not suing as receiver for American Bank & Trust Company. According to the Fourth Circuit, "FDIC sold the note as receiver for [the State] Bank, but purchased it in its general corporate capacity." 558 F.2d at 223.

In the present case, it was the district judge's second objection to the assignment agreement, that the FDIC would return amounts obtained in excess of the value it paid for the "unacceptable assets," which formed the real basis for her conclusion that there was not federal jurisdiction. The district judge was quite legitimately concerned that federal court jurisdiction not be improperly created by virtue of an assignment of rights and held that even after the assignment agreement the FDIC was functioning as a receiver.[6]

█ We believe, however, that the fact that the FDIC would not retain any amounts realized in excess of the value it paid for the "unacceptable assets" does not affect our analysis of jurisdiction under 12 U.S.C. § 1819. The FDIC was not acting as a receiver after the assignment of the "unacceptable assets" to the FDIC in its corporate capacity. Since the FDIC would keep all monies that it collected on the "unacceptable assets" up to approximately $10.5 million, then the FDIC would be asserting its own rights to that extent. The risk of loss as to the recovery on those assets would fall on the FDIC. What recovery that

5. In *Freeling v. Sebring,* 296 F.2d 244 (10th Cir. 1961), Freeling, a depositor, stockholder, and deposed president of a state bank, brought suit against the State's Banking Commissioner, who had closed the bank, and against the FDIC, which had been appointed the liquidating agent, to recover a deposit and to remove the FDIC from its position as liquidating agent. The Tenth Circuit, after noting that the FDIC may operate simultaneously in dual capacities as an insurer of deposits and as a receiver, dismissed the case for lack of jurisdiction because the suit was brought against the FDIC in its receivership capacity.

6. Before determining that the FDIC was acting as a receiver in bringing this suit, the district judge first cited 28 U.S.C. § 1359, which provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The district judge then recognized that this statute could not be applied in this case because the assignment agreement here was sanctioned by the Federal Deposit Insurance Act.

there be on the "unacceptable assets" up to the amount that the FDIC paid for the assets would flow to the FDIC's corporate treasury and not the receivership estate. To be sure, the monies that the FDIC collected in excess of the amount paid for the "unacceptable assets" would go to the FDIC as receiver for Tri-City Bank. As to that recovery, the FDIC would be asserting the rights of Tri-City Bank and of Tri-City's depositors, creditors, and shareholders. Under 12 U.S.C. § 1819, however, this lawsuit is to be brought in state court only if the claims that the FDIC is asserting are *only* those of Tri-City Bank and Tri-City's depositors, creditors, and shareholders. *In accord: Federal Deposit Insurance Corp. v. Godshall, supra,* 558 F.2d at 223.

Furthermore, the purpose of the assignment agreement was not to create federal court jurisdiction. In a number of ways the assignment agreement involving the Michigan National Bank of Macomb was a beneficial transaction.

✳ First, the sale of the "unacceptable assets" to the FDIC in its corporate capacity reduced the risk of loss to the FDIC as an insurer of deposits and facilitated the assumption of Tri-City Bank's deposit liabilities and "acceptable assets" by the Michigan National Bank of Macomb. Under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811, 1813, and 1821, the FDIC, in its capacity as insurer of deposits, was obligated to pay all deposit liabilities of Tri-City Bank, which was an insured FDIC bank, up to $20,000 per depositor because Tri-City Bank was unable to meet deposit demands. Because the FDIC, as receiver, sold the "acceptable assets" to the Michigan National Bank of Macomb and that Michigan Bank assumed the deposit liabilities of Tri-City Bank, there was no necessity to pay depositors under the Federal Deposit Insurance Act. The possibility that depositors would not receive their full debt was avert-

ed since the Michigan National Bank of Macomb was clearly solvent and able to pay deposits upon demand. Without the assignment agreement, any deposit liabilities of the Tri-City Bank in excess of $20,000 per depositor and any debts owed to non-depositor creditors would have been paid only on a *pro rata* basis, after payment of the expenses of liquidation, once the receivership had liquidated all of Tri-City Bank's assets several years later.

Second, the assignment agreement eliminated the need for constant court supervision of a receivership. A receiver needs court authority for the disbursement of funds to pay expenses, the negotiation of settlements, the issuance of accountings, and the payment, *pro rata,* of creditors. By virtue of the assignment agreement, the FDIC owned the "unacceptable assets" and could liquidate them without court supervision.

Finally, there was an uninterrupted continuation of bank business operations. In this case, Tri-City Bank was closed by Court order on September 27, 1974, after the close of the business day. The FDIC was appointed receiver, and the assignment agreement was entered into by the Michigan National Bank and the FDIC. On September 28, 1974, the business operations of the old Tri-City Bank, now operated under the name of the Michigan National Bank of Macomb, commenced. Tri-City Bank's insolvency posed no threat of an inability to pay deposits as demanded, and the Michigan National Bank of Macomb assumed a business which had an established good will and over $14 million in deposits.

Thus, neither objection of the district judge to the assignment agreement resulting in the FDIC being able to invoke federal jurisdiction under 12 U.S.C. § 1819 has merit.[7] The assignment agreement was *bona fide.* The FDIC was not in substance

---

7. A question beyond the scope of this appeal is what law applies to the merits of this case. *See D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 465, 467–68 nn.4 and 5, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *Federal De-*

*posit Insurance Corp. v. Meo,* 505 F.2d 790, 793 n.4 (9th Cir. 1974); *In re Anjopa Paper & Board Manufacturing Co., Inc.,* 269 F.Supp. 241, 252–54 (S.D.N.Y.1967); IA Moore's Federal Practice, ¶ 0.321 n.23.

acting in a receivership capacity when bringing suit. The judgment of the district court dismissing the case for lack of subject matter jurisdiction is reversed.