**FEDERAL DEPOSIT INSURANCE CORPORATION, in its separate corporate capacity, Plaintiff,**

v.

**C.H. BUTCHER, Sr., et al., Defendants.**

Civ. No. 3–84–762.

United States District Court, E.D. Tennessee, N.D.

May 1, 1987.

James R. Buckner & Charles B. Lee, Miller & Martin, Chattanooga, Tenn., for plaintiff.

David E. Rodgers, Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., Robert Delaney, Passino, Delaney & Hildebrand, Nashville, Tenn., Jerome Templeton, McCord, Weaver & Templeton, Jack L. Draper, Arnett, Draper & Hagood, Harold Stone, Stone & Hinds, Knoxville, Tenn., Patricia Fritts & J. Polk Cooley, Cooley, Simmons & Wms., Rockwood, Tenn., Jack Tallent, Kennerly, Montgomery & Finley, Sarah Sheppeard & Scott R. Fransen, Allen & Taylor, Lewis S. Howard, Jr., Howard & Ridge, Charles A. Wagner, III & Bill Mason, Wagner, Myers & Sanger, Knoxville, Tenn., Frederick Humbracht, Jr. & Robert J. Warner, Jr., Dearborn & Ewing, Nashville, Tenn., for defendants.

## ORDER

VINING, District Judge.

This order is being entered in response to several motions filed in the instant case which are to a great degree interconnected. These motions include the following:

(1) plaintiffs' motions to strike defenses of defendants C. H. Butcher, Sr. (Butcher, Sr.), Robert Clem (Clem), Earl Duff (Duff), Jerry Duncan (Duncan), Jack Lay (Lay), J.C. Parker (Parker), Sam Rose (Rose), Jack Walls (Walls), Bob Young (Young), William Moore (Moore), Jack Staff (Staff), and Emmett Foster (Foster),

(2) motions to amend, file counterclaim and file third party claims by defendants Edward C. Browden (Browden), Walls, Duncan, Lay, Butcher, Sr., Duff, Clem, Parker, Staff, Moore, and Young,

(3) motion of plaintiff to strike, dismiss, for judgment on the pleadings or in the alternative for summary judgment against Robert M. Delaney (Delaney).

## FACTS

The City and County Bank of Roane County (CCR) was a Tennessee state bank insured by the Federal Deposit Insurance Corporation. The FDIC in its corporate capacity under 12 U.S.C. § 1811, *et seq.*, as insurer of the deposits of UAB/HC did periodic examinations of the bank prior to its closing in 1983. These reports were provided to bank officials and board members after completion of the examinations. However, the purpose of the examinations was to protect the depositor insurance fund of the FDIC.

Due to the financial condition of CCR the Commissioner of Banking of the State of Tennessee pursuant to TCA § 45–2–1502 on May 27, 1983, took exclusive custody and control of the property and affairs of CCR and appointed the FDIC as receiver (FDIC/Receiver) of the bank. The FDIC/Receiver then sold the deposits, certain assets, and certain liabilities of CCR to the Bank of Oak Ridge, Oak Ridge, Tennessee for a premium of $1,351,000 in order to keep the CCR banking business as a going concern. To facilitate this purchase and assumption, the FDIC/Receiver and the FDIC in its corporate capacity (FDIC/Corporation) entered into a separate but related agreement pursuant to 12 U.S.C. § 1823(c)(2)(A) whereby FDIC/Corporation purchased the remaining assets of CCR which included all contracts, rights, claims, demands, and choses of action whatsoever not purchased by the Bank of Oak Ridge. The price paid by FDIC/Corporation for these assets was $18,514,900.

On October 9, 1984, as a result of the closing of CCR the FDIC/Corporation pursuant to the transfer of assets and assignments it received from FDIC/Receiver filed suit against the officers and directors of CCR for breach of statutory, contractual and common law duties owed by the defendants to CCR requesting damages in excess of $10 million.

## MOTION TO STRIKE

Motions to strike are authorized under Federal Rules of Civil Procedure 12(f). Among the purposes contemplated by Rule 12(f) are a determination by the court of the legal sufficiency of defenses advanced in the pleadings, the saving of time and money where defenses presented confuse the issues in the case and elimination of issues where as a matter of law no set of facts will support the issues subject to the motion to strike. *Kinnear-Weed Corp. v. Humble Oil and Refining Co.*, 214 F.2d 891 (5th Cir.1954), *cert. denied* 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715.

■ Rule 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

Although motions to strike are generally not favored and should be used sparingly, *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819 (6th Cir.1953), as Rule 12 iterates, the motion should be granted where the defenses to be stricken are insufficient as a matter of law, *Anchor Hocking Corp. v. Jacksonville Electric Authority*, 419 F.Supp. 992 (D.C.Fla.1976), immaterial in that they "have no essential or important relationship to the claim for relief or the defenses being pleaded," *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717, 721 (D.C.N.Y.1959), or are impertinent in that the "matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co.*, 245 F.Supp. 889 (D.C.Ill. 1965), *rev'd in part, aff'd in part on other grounds*, 323 F.2d 412 (7th Cir.1963), *cert. denied*, 379 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659. The granting of a motion to strike is in the discretion of the court. If the court determines the defenses to be insufficient as a matter of law, immaterial, or impertinent the granting of a motion to strike is appropriate.

As more fully discussed below this court finds that the defenses and counterclaims subject to the motion to strike are insufficient as a matter of law, immaterial and impertinent to the issues before this court.

## DUTY OF OFFICERS AND DIRECTORS

Though defendants admit a duty to CCR as its officers and directors, the gist of defendants' counterclaims against the FDIC/Corporation, third party claims against the FDIC/Receiver of CCR, and the United States and motions to amend answers is an attempt to transfer the duty of managing the affairs of CCR from the officers and directors of the bank to the FDIC. The FDIC/Corporation performed examinations of CCR pursuant to requirements of the Federal Deposit Insurance Act. The defendants are asserting a reliance upon those examinations in performance of their duties as officers and directors of the CCR. These examinations, however, were for the sole benefit of the FDIC and the protection of the depositors' insurance fund. This court finds that the safe operation of the bank was the responsibility of the directors acting through the officers of the bank and cannot be transferred to the FDIC/Corporation.

The United States Supreme Court has provided a cornerstone for determining the responsibility of officers and directors to their banks. In *Briggs v. Spaulding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.E.D. 662 (1891) the court held:

Directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and this includes something more than officiating as figure heads. They are entitled under the law to commit banking business, as defined, to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrongdoing, if that ignorance is the result of

gross inattention, ... *Briggs* at U.S. 165–166.

Further in *Bowerman v. Hamner,* 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113 (1919) quoting from an earlier decision by the court in *Martin v. Webb,* 110 U.S. 7, 3 S.Ct. 428, 28 L.Ed. 49 (1884), the court espouses that the executive officers of a bank transact its business by direction of the board of directors. The executive officers are the arm in the management of a bank's financial operations. These are recognized sound principles.

> Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business and to exercise reasonable control and supervision of its officers. They have something more to do than from time to time, to elect the officers of the bank, and to make declaration of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business.

*Martin* at U.S. 15, 3 S.Ct. at 433.

These decisions of the United States Supreme Court requiring ordinary care and diligence provide general definitions of the duties undertaken by the officers and directors of a bank. The court in each of these cases determined that the facts in each case did not warrant any more specific definitions of the duty of care required. However, the Tennessee Supreme Court has in two cases defined specific acts which would constitute negligence on the part of bank officers and directors. In the most recent of these cases, *Neese v. Brown,* 218 Tenn. 686, 405 S.W.2d 577 (1964), a suit was filed by the trustee of a bank in receivership against the bank directors for losses resulting from "failure of the defendants to use due care and diligence in the discharge of their duties as such directors." *Neese,* 405 S.W.2d at 579. The Chancellor

of the lower court overruled demurrers filed by the defendant directors and defendants appealed. The Tennessee court found the averments of the bill as stated within the sphere of the duties of officers and directors espoused by the Tennessee Supreme Court in *Wallace v. Lincoln Savings,* 89 Tenn. 630, 15 S.W. 448 (1891) and *Shea v. Mabry,* 69 Tenn. 319, 1 Lea 319 (1878). Though written almost 100 years ago the opinion of Judge Lurton in *Wallace* is appropriate even today. The opinion states:

> Directors, by assuming office, agree to give as much of their time and attention to the duties assumed as the proper care of the interests entrusted to them require. If they are inattentive to their duties, if they neglect to attend meetings of the board, if they turn over the management of the business of the company to the exclusive control of other agents, thus abdicating their control, then they are guilty of gross neglect with respect to their ministerial duties, and, if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which by due care and attention on their part could have been avoided, they will be responsible to the corporation. *Wallace* at 653, 15 S.W. 448.

In addition, "liability may result from mere inaction on [the directors] part, where such inaction is the proximate cause of a loss. Likewise, a director is chargable with knowledge actually possessed or which he might have possessed had he diligently discharged his functions. Ignorance of performance of illegal acts which is the result of inattention does not exculpate" *Neese,* at 580 quoting Fletcher's Private Corporations Vol. 3, 1947 revised Edition Section 1029, p. 541.

The court in *Neese* denied the demurrer and allowed the charged acts of negligence to stand. Included among those charged acts were failure to provide the time and attention required by the corporation, surrender of control of the corporation to its president, committing of large open and unsecured loans to companies affiliated with the corporation and its president, and

failure to carefully examine reports of the status of the corporation which would have revealed the illegal loans and diversions of the company's funds. *Neese* at 579. These acts of negligence apply equally to banking corporations as well as to other private or public corporations. *Neese, supra.*

In the earlier Tennessee Supreme Court case of *Green v. Officers and Directors of Knoxville Bank & Trust Company,* 133 Tenn. 609, 182 S.W. 244 (S.C.Tenn.1915), a denial of demurrer was appealed. The court found that a *prima facie* case of negligence had been found and that the allegations of the bill presented simple negligence involving the making of loans to totally insolvent entities resulting in total losses to the corporation, failure to exercise appropriate supervision of officers and directors, and passing of too much power to officers of the bank who committed fraudulent acts against the bank which could have been detected by the directors with due diligence which the directors failed to exercise.

Upon a close review of United States and Tennessee Supreme Court cases, attempts by the defendants to transfer responsibility for the management of CCR to the FDIC are ill founded. The responsibility for the bank's management was solely that of its officers and directors who, upon a finding of negligent handling of the bank's affairs can be held responsible to the FDIC/Corporation, as the bank's respresentative, for losses incurred as a result of the negligence of the officers and directors.

### Dual Capacity of Federal Deposit Insurance Corporation

The defendants have asserted various affirmative defenses against the plaintiff which include contributory negligence, estoppel, and mitigation of damages. Additionally, the defendants' motions to amend include counterclaims of negligence and gross negligence. These defenses and counterclaims involve the actions of the FDIC prior to the assignment of the cause of action by FDIC/Receiver to FDIC/Corporation and are essentially the same assertions with different titles.

In order to address these defenses and counterclaims asserted by defendants it is necessary to investigate the purpose of the FDIC as designed by Congress and the means by which this purpose is accomplished. The purpose of the FDIC is to promote stability and confidence in the nation's banking systems. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh. denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982); *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir.1979). This purpose is achieved in two ways, first by providing insurance for payment to depositers of banks in case of failure and second by providing a method of handling failed banks. In the first instance, the FDIC in its corporate capacity acts as insurer of the deposits of the bank. In the second instance, the FDIC acts in a separate capacity as receiver of the insolvent bank.

Generally after a state bank has been declared insolvent, the proper state banking official will place the bank into receivership, appointing the FDIC as receiver, pursuant to federal and/or state laws and regulations. The FDIC/Receiver may then handle the bank's insolvency in one of two ways. The first, and the least often used, is through liquidation of the assets of the bank and payment of depositors from the proceeds of liquidation. The second method, used in this instance, allows for sale of certain assets and liabilities of the failed bank to another bank, with those assets unacceptable to the purchaser being purchased and assumed by the FDIC in its corporate capacity. *Gunter, supra.* In the instant case the FDIC/Receiver was authorized to sell part or all of the bank's assets by TCA § 45–2–805 that the FDIC/Receiver and the FDIC/Corporation acting in these capacities are two separate entities is a well accepted matter of law. *See In re F & T Contractors, Inc.,* 718 F.2d 171, 1976 (6th Cir.1983) ("Under 12 U.S.C. § 1821(e)(1976) and 12 U.S.C. § 1823(c)(2)(A) ... the FDIC is authorized to act in dual legal capacities simultaneously as the receiver of an insolvent bank's deposits."). *Gunter, supra,* at 874. ("Fi-

nally, we note that other federal courts have recognized that under the statute the FDIC may act in a dual capacity."); *Gilman v. FDIC,* 660 F.2d 688 (6th Cir.1981); *FDIC v. Godshall,* 558 F.2d 220, 223 (4th Cir.1977) ("FDIC's capacity as purchaser does not change merely because FDIC as receiver for Bank, also acted as seller. The federal courts have recognized that FDIC may often act in two capacities simultaneously: as receiver of a bank and as an insurance corporation."). The Federal Deposit Insurance Act statutorily differentiates between the FDIC/Receiver and the FDIC/Corporation contemplating transactions in the nature of the assignment here in question from the FDIC/Receiver to the FDIC/Corporation.

### Defenses Assertable Against Federal Deposit Insurance Corporation/Corporation

■ Defendants concede that the FDIC may act in two separate capacities. However, defendants fail to recognize this in asserting that the primary issue involved in defenses is whether the FDIC may be held accountable in one capacity for actions it takes in its other capacity. Or put differently, whether the assignee of a claim is to be held accountable for its own conduct which is alleged to have caused the injury resulting in the claim. Defendants' primary reliance is on *First Empire Bank v. Federal Deposit Insurance Corporation,* 572 F.2d 1361 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). In that case the Federal Deposit Insurance Corporation as receiver of First Empire Bank entered into a purchase and sale agreement with Crocker National Bank whereby the Federal Deposit Insurance Corporation in its corporate capacity loaned the FDIC/Receiver in excess of $180 million in order to accomplish the purchase and sale. The suit in *First Empire Bank* involved creditors not included as such in the receivership of the bank who were requesting payment by the FDIC as receiver of First Empire Bank on the notes. The court in *First Empire* found the FDIC as receiver in error by omitting these creditors from the payment schedule of debts of

the bank stating, "We conclude that the responsibility lies in the FDIC under section 194 [of the Federal Banking Act] to compensate appellants for its failure as a receiver to make distributions ratibly." *First Empire* at 1371. The defendants have taken this quote above to mean that the court is holding the FDIC/Corporation responsible for the payments due the creditors. This court does not agree. The court in *First Empire* states throughout that the FDIC/Receiver was responsible for the failure to make ratible distributions. Due to the indistinct manner in which the court handled the FDIC/Receiver and FDIC/Corporation it can only be assumed that the court order applies to the FDIC in its capacity as receiver of First Empire. Nowhere in the order does the court designate FDIC/Corporation as responsible for these distributions. Moreover, a purchase and assumption agreement between the FDIC/Corporation and FDIC/Receiver was not involved in *First Empire.* The FDIC/Corporation provided a loan to the FDIC/Receiver in order to secure the sale of some assets and liabilities to Crocker National Bank, a loan which was secured by assets retained by FDIC/Receiver. This loan was initially given preference over loans held by creditors in the First Empire suit. The court found merely that these creditors were to be given preference over FDIC/Corporation in no way making FDIC/Corporation liable for the misdeeds of FDIC/Receiver, but merely realigning creditor preference for purposes of payment of bank debts.

In light of a complete analysis of First Empire the defendants have no foundation upon which to base a claim of liability of FDIC/Corporation for its own acts prior to the assignment of this action by FDIC/Receiver. The FDIC as a corporation is indeed a completely separate entity from the FDIC as receiver of a failed bank for all intents and purposes.

### Defenses Assertable Against Assignee

■ As a result of the purchase and assumption agreement between FDIC/Receiver and FDIC/Corporation, one of the

assets transferred to the FDIC/Corporation was the cause of action in this lawsuit against the officers and directors of CCR for breach of fiduciary duty and negligence.

The defendants assert claims against the plaintiff which are aimed at the actions of the FDIC in its capacity as insurer of the deposits of CCR during its examinations of the bank. In order to use these actions as defenses it is necessary to consider the FDIC as one entity so that defenses involving actions prior to the assignment may be assigned against the assignee (FDIC/Corporation). Such consideration ignores the distinction between the FDIC as receiver and the FDIC in its corporate capacity. The actions of the FDIC/Corporation occurred before the assignment of the action to the FDIC/Corporation but would be assertable as they would be deemed actions of the assignor due to the lack of distinction between the assignor and assignee. However, the dual capacity of the FDIC prevents asserting such claims.

Several defendants have asserted that these actions by the plaintiff in its corporate capacity give rise to the affirmative defenses asserted here in spite of the dual capacity of the FDIC. A general principle of assignment provides that the assignee steps into the shoes of the assignor upon assignment of the interest and takes the assignment subject to the defenses assertable against the assignor. *Leasing Service Corp. v. River City Construction, Inc.*, 743 F.2d 871 (11th Cir.1984); *State Mutual Life Insurance Company of America v. Deer Creek Park*, 612 F.2d 259 (6th Cir. 1979). The defendants cite the Restatement (Second) of Contracts § 336 (1981) as support for the contention that any actions by the assignee (FDIC/Corporation) prior to the assignment can be used against the assignee as defenses. If this were the case, the above principle of assignment, would not apply. The assignee would be subject to actions not assertable against the assignor and therefore would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or

taking on the characteristics of the assignor.

A careful reading of section 336 indicates that the assertion of any defenses against the assignee applies only in instances where the assignee is a party to the underlying contract or where the conduct of the assignee occurs subsequent to the initial assignment but prior to a reassignment. These facts do not exist in the present cause. This reading is supported by *American Training Services, Inc. v. Commerce Union Bank*, 415 F.Supp. 1101 (M.D.Tenn. 1976), *aff'd*, 612 F.2d 580 (6th Cir.1979). In that case the actions by the assignee were more closely associated with the underlying contract than in the instant case. Yet the court found actions by the assignee prior to assignment could not be used as affirmative defenses against the assignee.

In the instant case the main action is essentially one of CCR against its officers and directors which action was assigned to the FDIC/Corporation. The FDIC in such capacity steps into the shoes of CCR as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses assertable against it for actions prior to the assignment, as it was not a party to the obligations of the officers and directors to CCR nor was it a prior assignee of the action. Since the defenses of contributory negligence, negligence, estoppel, and mitigation of damages involve actions prior to the assignment upon which this action is based, these defenses are not assertable against the plaintiff.

### Duty of the FDIC and Negligence

The defendants' assertions of contributory negligence rest upon the supposition that contributory negligence does not require a duty on the part of the party against whom the defense is being asserted. The FDIC performed certain bank examinations which the defendants allege should have uncovered practices leading to the failure of CCR. The defendants allege the failure to discover constitutes negligence on the part of the FDIC. They further allege that the failure to inform the bank and its officers and directors of any

illicit banking practices which it did uncover was negligence on the part of the FDIC and such actions of negligence should act as a bar to recovery. These allegations of negligence are couched in several different forms including affirmative defenses of contributory negligence, estoppel, and mitigation of damages as well as counterclaims against the FDIC for negligence and third party complaints against the United States for the alleged negligent actions of the FDIC.

 The defendants contend that no duty is required for the affirmative defense of contributory negligence. The assertion is correct when applied to general tort law. However, the case currently before the court involves banks and banking practices, where it is a general principle of banking law that "[i]f, through recklessness and inattention to the duties confided to him, frauds and misconduct are perpetrated by other officers and agents or co-directors, which ordinary care on his part would have prevented, [a director of a bank] is personally liable for the loss resulting." In 1 Michie on Banks and Banking, chapter 3, § 63 at p. 280 (1973) (footnote omitted). The duty to discover fraud and misconduct is squarely upon the officers and directors of the banking institution and may not be transferred to the FDIC by purchasing insurance from it, *First State Bank of Hudson Co.*, nor by attaching to the FDIC negligence for actions performed at the time during which officers and directors had primary responsibility for the bank. In fact, the insurance provided by the FDIC is insurance benefiting the depositors of the bank, not an indemnification of its officers and directors. This reasoning applies to affirmative defense assertions of contributory negligence, estoppel, and mitigation of damages as well as to counterclaims for negligence on the part of the FDIC.

 In their motions for leave to file counterclaims the defendants attempt to set forth the negligence claim by several methods, all of which impose a duty on the FDIC where no duty exists. These methods are all aimed at the bank examinations performed by the FDIC prior to the Commissioner of Banking rendering CCR insolvent. "The purpose of the bank examinations by the FDIC under 12 U.S.C. § 1820(b) is to prevent losses that would result in claims against the insurance fund.... If the bank examination by the FDIC reveal any irregularities or fraud such examinations, though they may inure incidentally to the benefit of a bank, are intended primarily for the protection of the insurance fund," *First State Bank of Hudson County v. United States*, 599 F.2d 558, 563 (3d Cir.1979) (footnote omitted); see also *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D.N.Y.1979), and not for the benefit of its officers and directors. "The failure of the FDIC to discover fraud or weakness, or even to disclose such adverse information if it is discovered does not establish a claim for relief against the United States" (or the FDIC). Nor does the alleged failure to take action to remedy the problems establish a claim for relief. The supposed assumption of supervisory duties by the FDIC upon which the defendants allegedly relied in performing their duties as officers and directors of the CCR is non-existent. The examinations performed by the FDIC were those authorized by the Federal Deposit Insurance Act and cannot be seen as services to the bank upon which defendants could rely in performance of their duties as officers and directors. "Federal bank examinations are not beacons to light the path of erring directors or gulled stockholders," *Harmsen v. Smith*, 586 F.2d 156, 158 (9th Cir.1978).

## JUDICIAL ESTOPPEL

Several of the defendants have requested the court to allow amendments to their answers asserting the defense of judicial estoppel as a result of the plaintiff's claim of legal malpractice in an action in the Southern Division of the United States District Court for the Eastern District of Tennessee styled *FDIC v. Ridenhour, Bowers, Shumate, McCloud & Lacy*, Civil Action No. 1–84–649 (Ridenhour complaint).

Judicial estoppel is a general precept whereby a party is bound by sworn statements made during judicial proceedings, generally in former litigation, and cannot contradict the sworn statements in the subsequent litigation. *Allison v. Neal,* 217 Tenn. 181, 396 S.W.2d 344 (1965); *Melton v. Anderson,* 32 Tenn.App. 335, 222 S.W.2d 666 (1948). The defendants failed to meet these elements on several counts. First, the Ridenhour complaint filed by plaintiff is not made under oath. The pleadings involve only the position of the plaintiff in the action. Consequently, judicial estoppel may not rest on this basis. *Sturkie v. Bottoms,* 203 Tenn. 237, 310 S.W.2d 451 (1958). Second, the allegations in the Ridenhour complaint are not inconsistent with the allegations in the present action. The Ridenhour complaint generally deals with the legal malpractice of the defendants in their dealings with CCR. The instant case involves negligence and a breach of certain contractual fiduciary duties of the defendants toward CCR. These allegations considered together are not inconsistent. The allegation of malpractice by one set of defendants does not preclude the assertion of breach of contract and breach of fiduciary duties against the others, even though they may involve the same set of facts. Consequently, the court finds that the defense of judicial estoppel is insufficient as a matter of law and cannot be raised as a defense in the current action.

### DEFENSES OF LACHES, WAIVER, AND STATUTE OF LIMITATIONS

The defendants have asserted, through their original answers and through their motions to amend, the defenses of laches, waiver, and running of the statute of limitations. These defenses all involve the passage of time from the date on which the right of action accrued to the actual filing of the suit. This right of action did not arise until the bank was closed by the Commissioner of Banking of the State of Tennessee in May of 1983. Prior to that time any cause of action for breach of fiduciary duty and negligence against the officers and directors would have to be made by these same officers and directors,

as the controlling body of the bank, or by the shareholders to whom these officers and directors were providing information with regard to the status of the bank. Without knowledge of the alleged wrongful activities of the officers and directors, the shareholders would have neither the opportunity nor the information sufficient to bring suit. *Federal Deposit Insurance Corporation v. Byrd,* 516 F.Supp. 647 (D.P.R. 1981). Therefore, the right of action would not arise until after the officers and directors relinquished control of the bank, in May of 1983. *FDIC v. Byrd.* At that time the FDIC/Corporation was assigned the right of action of the bank against its officers and directors, and filed suit pursuant to that right on October 9, 1984, well within the statute of limitations and as soon as practicable after obtaining that right. Thus the defenses of laches, waiver, and running of the statute of limitations are insufficient as a matter of law.

### COUNTERCLAIMS AGAINST FDIC/RECEIVER

A number of the defendants have asserted counterclaims against the FDIC in its capacity as receiver of CCR. As noted previously in this opinion, the FDIC acts in two separate capacities and hence is considered two separate entities. Since the FDIC as receiver is not a party to this action, the defendants may not assert any claim against the FDIC in that capacity, as this court has no jurisdiction over counterclaims asserted against the FDIC in its capacity as receiver of CCR. *In re F & T Contractors, Inc.,* 718 F.2d 171 (6th Cir. 1983).

### COUNTERCLAIMS FOR LOSS IN VALUE OF CCR STOCK

Requests to file additional counterclaims have been made by several defendants for loss of value of their stock in CCR. These counterclaims are made by the defendants in their capacities as shareholders of CCR. However, the defendants have no standing to support the counterclaim, "as the receiver of a bank after its appointment, represents the bank, its shareholders

and creditors." *O'Connor v. Rhodes,* 79 F.2d 146 (D.C.Cir.1935); *Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Gregory v. Mitchell,* 634 F.2d 199 (5th Cir. 1981). *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893 (5th Cir.1968). Any claim for loss of value of CCR stock must then be brought by FDIC/Receiver as representations of CCR. Hence, the motions for leave to file counterclaims for recoupment of loss of value of CCR stock must be denied.

## THIRD–PARTY COMPLAINTS AGAINST THE UNITED STATES

A number of defendants have requested leave to file third-party complaints against the United States for acts of the FDIC as its agent. These claims involve the alleged negligence of the FDIC. Since this allegation is in the form of a third-party complaint administrative remedies need not be exhausted prior to impleading the United States as a third-party defendant. 28 U.S.C. § 2675(a). However, the claim may be advanced only if "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The claim, sounding in negligence, requires a duty on the part of the FDIC to the defendants. The court has determined that the FDIC owed no duty to the defendants; therefore, the defendants have failed to state a claim upon which relief can be granted and the request for leave to file third-party claims is hereby DENIED.

For the above stated reasons, the court hereby strikes from defendants' answers the following:

(1) As to defendants Clem, Duff, and Parker, affirmative defenses 2, 3, and 4;

(2) As to defendants Duncan, Lay, and Walls, paragraphs 19, 20, 21, and 24;

(3) As to defendant Rose, paragraphs 19, 20, 21, 22, and 23;

(4) As to defendants Young and Moore, paragraphs 20, 21, and 22;

(5) As to defendants Staff and Butcher, Sr., paragraphs 17, 18, and 19;

(6) As to defendant Foster, paragraphs 20, 21, and 23;

(7) As to defendant Delaney, paragraphs 17, 18, 19, 20, 21, 23, 24(d), 25, all counterclaims and third-party complaints.

The plaintiff's motion to strike as to defendant Browden is hereby rendered moot, as defendant Browden has been dismissed without prejudice from this case.

For the above stated reasons, all pending motions to amend, file counterclaims, and file third-party claims are hereby DENIED.