**FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized and existing under the laws of the United States of America, Plaintiff,**

v.

**Marian G. LEACH, Alexander Bartneck, Outdoor Resorts of America, Inc., a foreign corporation, and E. Randall Henderson, Jr., jointly and severally, Defendants.**

**No. 80–71491.**

United States District Court,
E. D. Michigan, S. D.

Nov. 23, 1981.

Larry E. Powe, Freeman, McKenzie, Matthews, Scherer & Stepek, P.C., Mount Clemens, Mich., for plaintiff.

Laurence S. Schultz, Detroit, Mich., for defendants Outdoor Resorts and E. Randall Henderson, Jr.

Larry G. Sharp, Flint, Mich., for defendants Leach and Bartneck.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This is a suit on certain promissory notes, which was filed on April 24, 1980. The plaintiff Federal Deposit Insurance Corporation (FDIC) purchased the notes among the assets of an insolvent Michigan-chartered bank which had been insured pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq. This court's jurisdiction is predicated upon Section 2[9] of that Act, 12 U.S.C. § 1819, which authorizes the FDIC to bring suits, in its corporate capacity, in the United States District Courts. The plaintiff corporation has moved for summary judgment on the notes against the defendant makers: Marian G. Leach, Alexander Bartneck, Outdoor Resorts of America, and E. Randall Henderson. For the reasons more fully discussed below, there being no dispute as to any material fact and the plaintiff being entitled to judgment as a matter of law, the motion must be and hereby is granted.

On September 27, 1974, the Financial Institutions Bureau of the State of Michigan petitioned the Circuit Court for the County of Macomb, Michigan, for an order closing the Tri-City Bank of Warren, Michigan, because of its insolvency. Pursuant to M.C.L.A. § 487.551, that court entered an order forthwith, both closing Tri-City Bank and appointing the Federal Deposit Insurance Corporation as receiver thereof, effective at 7:00 p. m. that same evening.

To maintain the viability of the banking facility, and to avoid the losses to all concerned consequent upon a liquidation and payment by FDIC to depositors to the extent of their statutory deposit insurance, the FDIC as receiver entered into immediate overnight negotiations with the Michigan National Bank of Macomb, and with the FDIC in its corporate capacity, or the plaintiff "corporation." As a result, the Michigan National Bank purchased all acceptable assets of the Tri-City Bank (those being largely its cash), assumed its deposit liabilities, and opened Tri-City's doors the next morning under the name and ownership of Michigan National.

During those same overnight negotiations, the plaintiff corporation purchased the "unacceptable" assets of Tri-City, in bulk, for a consideration exceeding $10,000,-000.00, in a "Purchase and Assumption" transaction. The unacceptable assets purchased by the plaintiff corporation included, according to its contract with the receiver, "all assets of the bank not carried on its books of account." The general bill of sale specifically included:

all contracts, rights, claims, demands, choses in action or causes whatsoever pending . . . [and] any claims against its directors, officers or employees arising out of any act of any such persons in respect to the Bank or its property or arising out of the non-performance or manner of performance of their duties.

In addition, the bill of sale conveyed to the corporation all monies, credits or property of every kind or character acquired by the Bank as a result of the sale, collection or enforcement of any of the property sold which had not been applied or credited on the assets comprising the property sold.

Concerning the Purchase and Assumption transaction, the Sixth Circuit Court of Appeals has recently noted, in *Gilman v. FDIC*, 660 F.2d 688, 1981, that:

> This buy-back procedure is favored because it minimizes loss to depositors, conserves the assets of the insurance fund and maximizes the value of the insolvent bank's assets.

Among the "unacceptable" assets listed in the contract as purchased by the corporation in that transaction was a promissory note executed by defendants Marian G. Leach and Alexander Bartneck, under date of May 1, 1974 for $75,000 at 13% per annum interest. Plaintiff corporation's officials later discovered, among the bank's collateral files which the corporation had purchased, another note for $75,000 which had been pledged as collateral by Leach and Bartneck for their note. The collateral note had been given by Outdoor Resorts of America and its President, E. Randall Henderson, to Leach, Bartneck, and one Andrew E. Cisaruk, and was dated April 30, 1974. It was unconditionally payable in 90 days, and also bore a 13% rate of interest. At the time this note was discovered in Tri-City's records it was endorsed on the back by Andrew Cisaruk as collateral to Tri-City Bank. It is also undisputed, however, that in 1976 Leach and Bartneck appeared at the plaintiff corporation's offices and endorsed that note with their signatures under the collateral notation, as well.

Plaintiff corporation now sues Leach and Bartneck on their $75,000 note, and Outdoor Resorts (ORA) and Henderson on their note for the same amount: or, in short, seeks the adjudication of this court that all of the defendants are jointly and severally liable for $75,000 plus 13% interest. As of May 1, 1981, the accrued interest on the notes totalled $101,445.42. In July, 1974, the Tri-City Bank received an interest payment totalling $2,979.10 from defendants Leach and Bartneck on their personal promissory note.

The bank's records indicated that the Leach/Bartneck $75,000 note was partially a renewal of a note which they had executed with Cisaruk on February 13, 1974, for $50,000 at 10%. The renewal was executed only by the two present defendants, however, and it further covered an additional advance of $25,000. It is further acknowledged and undisputed that Leach and Bartneck had authorized the disbursement of both the original $50,000 and the subsequent $25,000 to the Prominent Realty Co., Cisaruk's real estate brokerage firm. Leach and Bartneck, also undisputedly, received a portion of those loan proceeds as vendors under a land contract with ORA.

The ORA/Henderson note had also been given partially to renew an earlier $50,000 promissory note which had been executed by ORA and Henderson to Leach, Bartneck, and Cisaruk in January, 1974. That note had been pledged to Tri-City as collateral for the initial $50,000 Cisaruk/Leach/Bartneck note, and for the new note and advance of $25,000. Henderson's endorsement and guarantee of the ORA note are unconditional. However, Henderson and ORA here claim a failure of consideration for their notes.

■ It is noteworthy that, in response to Cisaruk's demand of July 26, 1974 (made on behalf of himself, Leach, and Bartneck) for payment of the ORA/Henderson note for $75,000, ORA did issue a check dated August 18, 1974 for $77,979.10, payable to Leach, Bartneck and Cisaruk. Each of those persons in turn endorsed that check over to Tri-City for payment of their loan.

That check was dishonored, and a dispute exists as to whether the reason therefor was "payment stopped" or "insufficient funds." In any event, the execution and endorsement of that check by each of these defendants clearly constitutes an acknowledgement of their liability and indebtedness on the notes in the first instance. The bank's existence ended with the events of September, 1974, and the next demands for payment were those of the plaintiff corporation.

By their deposition testimony defendants Leach and Bartneck have acknowledged that the proceeds of their loans were for business purposes. Moreover, all of the other undisputed facts and circumstances of this case militate only toward that conclusion. Also, although Leach and Bartneck here argue an oral agreement of accord and satisfaction with the Tri-City Bank, by the bank's acceptance of the collateral note in "satisfaction" of their personal note, they do acknowledge that they pledged the ORA note to the bank as collateral for their note, and the court notes that their endorsement of the ORA note plainly states that it was delivered as collateral.

## THE STATUS OF PLAINTIFF CORPORATION AS NOTEHOLDER

The Federal Deposit Insurance Corporation was organized and exists pursuant to the laws of the United States, 12 U.S.C. § 1811 et seq. The primary purpose of its creation was to provide a system of insurance to protect depositors of banking institutions from losses which would otherwise be occasioned upon the failure of such institutions to meet demand obligations. *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3d Cir. 1979), cert. denied 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). To meet this broad statutory duty, the FDIC is cloaked with both supervisory and regulatory control over insured institutions. 12 CFR Parts 300–349 (1980). The FDIC is empowered to terminate the status of banks as insured where it is found that bank officers are engaged in unsafe banking practices. 12

U.S.C. § 1818. The corporation is authorized to issue cease and desist orders when the appropriate banking agency determines that officers are engaged in unsafe banking practices, § 1818(e)(1); to suspend or remove an officer or director of a bank who, by reason of his position in the bank, has received financial gain through a breach of his fiduciary duty, *Id.*; and to subpoena witnesses in connection with any examination or proceeding involving a claim for insured deposits. *Id.* All banks which are members of the Federal Reserve System are required to be insured under the Act. *Bank of China v. Wells Fargo Bank & Union Trust*, 209 F.2d 467 (9th Cir. 1952). State financial institutions may petition for membership under the insurance program offered by the Act. 12 CFR Part 303, § 303.1 (1980). Banks insured under the Act, however, are required by law to meet the specific conditions and requirements set forth in 12 U.S.C. §§ 1815, 1816. Failure to comply with those requirements subjects a bank to administrative action by the FDIC. 12 CFR Part 308 (1980).

The cornerstone of the Federal Deposit Insurance Act is, of course, the insurance fund. 12 U.S.C. § 1821. In 1933, when it had become evident that existing devices of state bank supervision and control had failed to maintain a safe and adequate banking system, and devastating disturbances had occurred, the Federal Deposit Insurance Corporation was created to provide federal insurance of bank deposits. The insurance fund began its existence with a loan from the Department of Treasury and the twelve Federal Reserve Banks. 1950 U.S. Code Cong. Serv. 3765, 3766 (1950). This initial loan was repaid by the corporation in 1947, and since that time the fund has remained completely self-sufficient, funded through assessments on the deposit liabilities of member banks, 12 U.S.C. § 1817.

When an insured bank becomes unable to meet its demand obligations, the FDIC may be appointed receiver. In the situation of a national bank under the jurisdiction of the Comptroller on the Currency, the FDIC

may act as its receiver on petition to the United States District Court having jurisdiction over the bank, 12 U.S.C. § 1821(c). Whenever a bank is closed by order of the Comptroller for failure to meet the demands of its depositors, the FDIC may act to liquidate the assets of the Bank. *Id.* When a state bank is involved, as here, the FDIC may act in what has been termed a dual capacity. *Federal Deposit Insurance Corporation v. Ashley*, 585 F.2d 157, 161 (6th Cir. 1978). Under 12 U.S.C. § 1821(e) the corporation is authorized to accept the appointment as receiver of a state bank, when such action is permitted and ordered pursuant to state law. When acting as a receiver under state law, the rights and obligations of the FDIC are governed by state law. *Federal Deposit Insurance Corp. v. Ashley, supra*, 585 F.2d at 161; *Freeling v. Sebring*, 296 F.2d 244, 245 (10th Cir. 1961). With this appointment as receiver the FDIC may enter into a purchase and assumption agreement with itself to allow the FDIC in what is termed its "corporate capacity" to purchase assets of the insolvent bank and facilitate the acquisition of the acceptable assets of the insolvent bank by a member state bank of unquestioned strength in the geographical vicinity. Assets purchased by the FDIC in its corporate capacity are acquired pursuant to 12 U.S.C. § 1823(e). In the alternative, the FDIC receiver may proceed to liquidate the insolvent state bank, in its discretion. 12 U.S.C. § 1821(d). Suffice it to say, the FDIC has been recognized as having broad powers to carry out its statutorily prescribed duties. *See, e. g. Chatham Ventures, Inc. v. Federal Deposit Insurance Corporation*, 651 F.2d 355 (5th Cir. 1981) ("The FDIC may exercise all powers specifically granted . . ., and such incidental powers as shall be necessary to carry out the powers granted.")

The plaintiff corporation has here purchased the unacceptable assets of the Tri-City Bank, including the notes here in suit, pursuant to 12 U.S.C. § 1823(e), which provides as follows concerning agreements in derogation of its title to any assets so purchased:

No agreement which tends to diminish or defeat the right, title or interest of the corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

■ The caselaw subsequent to this statutory enactment is well settled that any alleged agreement whatsoever which diminishes the interest of the plaintiff corporation in an asset which it has acquired from a bank pursuant to § 1823(e) is absolutely invalidated, as against the corporation, unless each of the statutory requirements are met. *See, Federal Deposit Insurance Corporation v. Hoover-Morris Enterprises*, 642 F.2d 785 (C.A. 5, 1981); *Federal Deposit Insurance Corporation v. First Mortgage Investors*, 485 F.Supp. 445 (E.D.Wis.1980); *Federal Deposit Insurance Corporation v. Smith*, 466 F.Supp. 843 (N.D.Ga.1979); *Federal Deposit Insurance Corporation v. Vogel*, 437 F.Supp. 660 (E.D.Wis.1977); and *Dasco v. American City Bank and Trust*, 429 F.Supp. 767 (D.Nev.1977).

Moreover, where defenses to notes acquired by the plaintiff corporation are raised which do not fall within the definition of § 1823(e) "agreements," but are otherwise recognized defenses to a suit on a promissory note, the courts have accorded a stature to the corporation superior to that of one claiming to be a holder in due course, as a matter of federal commonlaw. The protected status of the plaintiff corporation under federal commonlaw was first declared by Justice Douglas in *D'Oench, Duhme and Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676,

86 L.Ed. 956 (1942). In that case, the note on which plaintiff corporation sued had been delivered to a state bank before enactment of the Federal Deposit Insurance Act, the Act had subsequently become law, the bank had become insured by FDIC, had failed, and plaintiff corporation had acquired the note. The defendant maker's defense was that the note had been given without any consideration whatsoever and with the understanding that no suit would be brought thereon, and that plaintiff corporation was not a holder in due course under applicable state law. The plaintiff corporation's position was that the maker was estopped to raise such defenses, inasmuch as the note had been executed for the purpose of permitting the bank to avoid having its records show any past due bonds. Such a misrepresentation, it argued, would deceive creditors of the bank, state banking authorities, and the FDIC; and the maker had participated in the misrepresentation by its actual knowledge of the purpose of the notes and by the payment of interest on the notes to make them appear to be a good asset. Justice Douglas wrote that, inasmuch as the plaintiff federal corporation existed and had brought the suit by authority of an act of Congress, the maker's liability on the note was a question of federal, not state, law. An examination of federal banking statutes, moreover, revealed:

> ... a federal policy to protect respondent and the public funds which it administers against misrepresentations as to the securities in the portfolios of the banks which respondent insures or to which it makes loans. (315 U.S. at 457, 62 S.Ct. at 679.)

The court's analysis of caselaw reflecting that policy noted that in some cases, the maker found liable on his note had been party to a scheme of deception, but that in others he had "no positive idea of committing any fraud upon any one" (315 U.S. at 458, 62 S.Ct. at 679); was "very ignorant and ill-informed of the character of the transaction" (*Id.*); or may not "have intended to deceive any person" (315 U.S. at 459, 62 S.Ct. at 680).

> The test is whether the note was designed to deceive the creditors or the public authority *or would tend to have that effect.* It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled. (315 U.S. at 460, 62 S.Ct. at 680) (Emphasis added.)

\* \* \* \* \* \*

> Though petitioner was not a participant in this particular transaction and, so far as appears, was ignorant of it, nevertheless it was responsible for the creation of the false status of the note in the hands of the bank. It, therefore, cannot be heard to assert that the federal policy to protect respondent against such fraudulent practices should not bar its defense to the note. (315 U.S. at 461, 62 S.Ct. at 681.)

The teachings of *D'Oench, supra,* are good law today. Indeed, in *Gilman v. Federal Deposit Insurance Corporation,* 660 F.2d 688 (6th Cir. 1981), the plaintiff corporation's protected status was maintained as against a maker's claim for rescission of a note on which the district court had held the corporation chargeable with knowledge of a statutory violation, "since an examination of plaintiff's loan file on that date would have shown [irregularities] even then." Circuit Judge Martin wrote, in reversing:

> In our view, the FDIC is under no duty, in either of its capacities, to examine the assets of a failed bank before it agrees to execute Purchase and Assumption and Sale of Assets Agreements. By necessity, in this as in every case, these agreements were transacted quickly to protect the insolvent bank's status as a "going concern."

\* \* \* \* \* \*

> We disagree, and hold that actual knowledge must be shown as of the date the FDIC entered into the ... agreements.

\* \* \* \* \* \*

> Were we to follow the District Court on this point, the FDIC as insurer would be

placed in an untenable position. To hold the FDIC responsible retroactively for the misdeeds of its predecessors of which it is ignorant when it agrees to repurchase all returned assets would hamper the FDIC's ability and inclination to opt for a Purchase and Assumption arrangement. The FDIC would never be able to enter one with a clear assessment of the amount of worthless paper and litigation it might face. This dilemma would, in turn, frustrate the public policies behind the schemes of national banking insurance.

■ · The claim of the plaintiff corporation herein is, accordingly, of greater strength than that of the traditional putative holder in due course.

## THE LIABILITY OF DEFENDANTS LEACH AND BARTNECK

The defenses of these defendants are several. First, they assert their oral agreement with the president of the failed Tri-City Bank that their delivery of the ORA/Henderson note was accepted in full satisfaction of their debt on their personal note. They further argue that the 12 U.S.C. § 1823(e) proscription of oral agreements may not be relied upon by the plaintiff corporation herein, because plaintiff did not purchase the note directly from the failed bank, but from the FDIC in its status as receiver; and because an agreement of accord and satisfaction is not of the type contemplated by § 1823(e). Next, they argue an oral agreement with the president of Tri-City that the bank would not collect on either their personal or the collateral note. Next, they argue that plaintiff corporation is barred from recovery on either note because of its laches, in filing this suit. And, finally, these defendants argue that the notes are unlawfully usurious, under Michigan Law, and therefore to that extent unenforceable.

■ The oral agreement of accord and satisfaction with the Tri-City bank president which is raised by these defendants' assertion that the bank's acceptance of the (still-unpaid) ORA/Henderson "collateral" note was in full satisfaction of their debt on their personal note, is clearly within the scope of 12 U.S.C. § 1823(e). It is an oral "agreement which tends to diminish or defeat" the plaintiff corporation's rights under an asset which it had acquired under that section. Moreover, the "agreement" meets none of the four clear, mandatory, and conjunctive requirements of that section for any agreement to become an effective defense against plaintiff corporation. It was neither in writing, executed contemporaneous with the bank's acquisition of the note or at any other time, nor approved by the bank's board of directors or loan committee and reflected as such in its minutes, nor an official record of the bank.

■ The second/alternative oral agreement which these defendants have raised—the bank president's agreement not to collect on their note or the collateral note—must fall under the same standards. Moreover, it is clear that the same conclusion must be reached as to both agreements, quite aside from the statute, if the equitable principles of *D'Oench, Duhme & Co., supra*, and the federal policy supporting plaintiff's acquisition of "unacceptable assets," are applied. Accordingly, defendants' argument that the accord and satisfaction agreement is not of the type contemplated by § 1823(e) will not pass muster. The defendants have, by any such agreement, lent themselves to a scheme likely to mislead banking officials. It is undisputed that the bank continued to carry both notes, unpaid, on their books as assets even after acceptance of the "collateral" note, allegedly in full payment of or substitution for the personal note. Neither note was marked paid, and the second bore the endorsement of a "collateral" status for the first. Bank examiners, and all other authorities, have been led to believe that the bank's assets included the Leach/Bartneck note, secured by the collateral of the ORA/Henderson note. Neither was cancelled, or returned to its maker. Under the rule of *D'Oench, supra*, and our Sixth Circuit's most recent *Gilman* decision, defendants cannot escape liability on the strength of such agreements or understandings.

■ This court also rejects defendants' argument that § 1823(e) provides no shield to the plaintiff corporation when the FDIC has initially acquired the assets in its capacity as a *receiver* of the failed bank. Although it is true that the FDIC was appointed by the Macomb County Circuit Court as receiver of the Tri-City bank, pursuant to Michigan law, it is here enforcing rights clearly secured by § 1823(e). While acting as a receiver under state law, the FDIC is indeed subject to state law defenses to recovery on notes in its possession, as the failed bank would be. *FDIC v. Ashley*, 585 F.2d 157, 161 (6th Cir. 1978). In claims arising out of its receivership capacity, it cannot invoke original jurisdiction in the federal courts. *Ashley, supra*, 585 F.2d at 161; *Freeling v. Sebring*, 296 F.2d 244 (10th Cir. 1961). Here, however, as has been fully discussed above, the FDIC is acting in its corporate capacity, having purchased the assets from the receiver of the Tri-City Bank in a purchase and assumption arrangement, and its status as a holder is governed by federal commonlaw. *FDIC v. Godshall*, 558 F.2d 220, 223 (4th Cir. 1977); *FDIC v. Abraham*, 439 F.Supp. 1150 (E.D. La.1977); *FDIC v. Design & Development Corp.*, 73 F.R.D. 442 (E.D.Wis.1977). It is not necessary for the FDIC to have initially acquired control of the assets of an insolvent bank in its corporate capacity for it to invoke the protection afforded by § 1823(e). Indeed, at 12 U.S.C. § 1823(d), it is specifically provided that:

> Receivers or liquidators of insured banks closed on account of inability to meet the demands of their depositors shall be entitled to offer the assets of such banks for sale to the corporation ... upon receiving permission from the appropriate state authority .... The corporation, in its discretion, may make loans on the security of or may purchase and liquidate or sell any part of the assets of an insured bank which is now or may hereafter be closed on account of inability to meet the demands of its depositors ....

The statute clearly contemplates, therefore, that those assets which the corporate plaintiff has purchased from receivers (without limitation), pursuant to the authority of § 1823(d), are those to which no oral agreement may defeat its title, under § 1823(e), which immediately follows. Moreover, in *FDIC v. Ashley, supra*, the Sixth Circuit has specifically held that:

> With respect to the district judge's first objection, that the FDIC acted as both the seller and a purchaser, we conclude that under the statutory scheme of the Federal Deposit Insurance Act, 12 USC § 1811 et seq, that "FDIC's capacity as purchaser does not change merely because FDIC, as receiver for [the State] Bank, also acted as seller." *FDIC v. Godshall*, 558 F.2d 220, 223 (4th Cir. 1976). Under the Federal Deposit Insurance Act, the "FDIC may often act in two capacities simultaneously: as receiver of a bank and as an insurance corporation." *FDIC v. Godshall, supra*, 558 F.2d at 223. See *FDIC v. Boone*, 361 F.Supp. 133 (W.D. Okla.1972). A review of the relevant provisions of the Federal Deposit Insurance Act supports this conclusion. (585 F.2d at 160).

■ Defendants Leach and Bartneck are similarly misguided in their contention that plaintiff is barred from recovery on either of these notes by the doctrine of laches. *Kaminski v. Wayne County Board of Auditors*, 287 Mich. 62, 282 N.W. 902 (1938). They contend that a question of fact exists, as to whether plaintiff's lack of diligence in its effort to recover on these notes by filing this suit has constituted laches. This court finds, however, that there is no dispute as to any material fact. Whether plaintiff's claim accrued on the date the receiver acquired the unacceptable assets of Tri-City bank (September 27, 1974) or at the maturity of these notes (July 20, 1974), or on the subsequent date of the discovery of the ORA/Henderson note in the bank's files, it is undisputed that plaintiff's suit was filed within six years of the accrual of its claim, on April 24, 1980. In Michigan, according to *Kaminski, supra*, delay in asserting a claim for a period shorter than the applicable statute of limitations does not constitute laches, in the absence of

exceptional circumstances. No exceptional circumstances other than plaintiff's lack of diligence are here alleged, and it is noteworthy that plaintiff herein brings an action at law, and seeks no equitable relief. Michigan statute (M.C.L.A. § 600.5815) renders the equitable doctrine of laches applicable only to those actions in which equitable relief is sought. Moreover, as noted above, when the FDIC acts in its corporate capacity it is not subject to state law defenses. *FDIC v. Ashley, supra; FDIC v. Smith*, 466 F.Supp. 843 (N.D.Ga.1979). Thus, although the defense of laches may be valid in some actions brought by the receiver in state court, it is by no means applicable to an action brought by the FDIC in its corporate capacity. It is also well settled in the law that the defense of laches is inapplicable to an action brought by a federal corporation. *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *see United States v. 93 Court Corporation*, 350 F.2d 386 (2d Cir. 1965) (Reconstruction Finance Corporation not subject to defense of laches).

■ But assuming, arguendo, that the defense of laches under Michigan law were available to this plaintiff, we must address ourselves, pursuant to *Kaminski, supra*, to the question of whether plaintiff has permitted the statute of limitations to run on its claim at law. The statute pursuant to which plaintiff corporation exists and functions provides no time limitation within which it must sue on notes acquired in its corporate capacity. Congress has, however, provided a statute of general applicability to govern the time period within which federal corporations, such as the FDIC, are to bring such actions. In 1966 Congress enacted Pub.L. 89–505, codified at 28 U.S.C. § 2415, which established, to the exclusion of any state law, "a federal statute of limitations with respect to every action brought by the United States ... or agency thereof which is founded upon any contract express or implied." *Federal Deposit Insurance Corporation v. Bird*, 516 F.Supp. 647 (D.P.R. 1981). The statute provides, in pertinent part:

> (a.) ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ....

There is no dispute but that plaintiff herein has filed this suit within the six year limitation, whatever the date on which its right of action accrued.

Accordingly, inasmuch as plaintiff has filed this suit at law within the governing statute of limitations, even if the claim were an equitable one and Michigan law were applicable, it would not bar this claim.

■ These defendants contend, finally, that plaintiff corporation is barred from recovery of the face amount of interest on the notes because the 13% stated rate is usurious, under Michigan law. The Michigan statutory rate for an instrument in writing, with various exceptions not here applicable, is 7%. M.C.L.A. § 438.31. However, at M.C.L.A. § 438.61 it is further provided that:

> ... it is lawful in connection with any extension of credit to any business entity by any state or national chartered bank or insurance carrier for the parties to agree in writing to any rate of interest. For the purposes of this act "business entity" means (1.) any corporation, trust, estate, partnership, cooperative or association, or (2.) any natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan will be used, but the exemption provided by this act does not apply if the extender of credit has notice that the person signing the sworn statement was not engaged in the business indicated.

Plaintiff herein has acknowledged that the records of Tri-City Bank include no statutory sworn statement of business purpose. It argues, however, that the FDIC, because of its special statutory duty and the federal policy surrounding it, must not be bound by a technical reading of a state

usury statute. This court agrees that it is directed to the federal law in this as in other controversies to which the corporation plaintiff is a party. In so doing, it finds most fitting on this rarely-litigated question, the analysis applied by the District Judge in *FDIC v. Julius Richman*, 80 FRD 114 (E.D.N.Y.). In that case, the FDIC moved for summary judgment and to strike certain affirmative defenses of the maker of a note purchased by the FDIC. Among the defenses asserted by the maker was the argument that it was usurious under state law. In holding that the defense of usury was not available as a defense against the corporate FDIC, the court, citing *D'Oench, supra*, stated that the maker's liability was unaffected, inasmuch as his action in executing and delivering the note had created a questionable asset on the books of the bank which might deceive creditors or public authorities, or tend to have that effect.

This court similarly finds, under the undisputed circumstances of this case, that the defense of usury must fall under the rule of *D'Oench, supra*, and the very recent *Gilman* decision of this circuit. Moreover, this ruling does no violence to the public policy of the State of Michigan, which the plain statutory language quoted above indicates is intended to protect the personal consumer borrower from usurious rates, while permitting the business borrower to exercise his business judgment in such matters. Although there is no sworn writing in the bank's records of the business purpose of this loan the sworn deposition testimony of Leach and Bartneck has undisputedly confirmed such a purpose. Nothing in the record indicates the contrary, and much supports that conclusion in the undisputed record. Accordingly, the usury defense must fail.

## THE LIABILITY OF OUTDOOR RESORTS OF AMERICA, INC. AND HENDERSON

The defenses of defendants ORA and Henderson to liability on their note are (1.) that plaintiff must make a factual showing that the ORA note was an asset of the

Tri-City Bank and was purchased by plaintiff in its Purchase and Assumption transaction of September 27, 1974; (2.) that the assignment of the ORA note by Leach and Bartneck in 1976 was invalid; and (3.) that plaintiff is not protected by § 1823(e) or the *D'Oench* rule from the defense of failure of consideration as raised by these defendants.

■ In support of their first defense, these defendants have submitted the affidavit of their counsel, stating that he has examined the bill of sale and exhibits referenced therein, which evidence the plaintiff's Purchase and Assumption of the Tri-City Bank's unacceptable assets, and has determined that no reference is made in those documents to the ORA/Henderson note. The question of fact attempted to be raised by that affidavit is laid to rest, however, by the affidavit submitted by plaintiff of the former President of Tri-City Bank. That deponent, on personal knowledge as lending officer, has stated his personal familiarity with the ORA note and knowledge of its receipt by the bank as collateral to secure the Leach/Bartneck May 1st note. The President further stated that the bank at all times maintained the new ORA note in its files as collateral for the new Leach/Bartneck note. Plaintiff has also furnished the court with the affidavit of the FDIC Liquidation Assistant responsible for the assets purchased from the receivership of the former Tri-City Bank. That deponent has stated that he was in charge of investigating the liquidation of defendants Leach and Bartneck's note for $75,000 dated May 1, 1974; that in the course of his duties he received and reviewed the credit and collateral files of the former Tri-City Bank and, in that review, discovered the ORA promissory note for $75,000 dated April 30, 1974, payable to Leach, Bartneck and Cisaruk; and that the reverse side of that note reflected a purported assignment to Tri-City Bank as collateral by Cisaruk. The deponent further states that, in 1976, Leach and Bartneck appeared at the FDIC Bloomfield Hills, Michigan, offices to execute their signatures on that note, to complete the assignment as collateral for the

indebtedness owed. Those affidavits are uncontradicted. There is, on the basis of the above, no question raised as to any material fact concerning the plaintiff's acquisition of the ORA/Henderson note as part of the Purchase and Assumption transaction of September 27, 1974.

These defendants further argue, however, that the 1976 assignment of their note by Leach and Bartneck, under the previous collateral endorsement by Cisaruk, is invalid because the Tri-City Bank had by then become insolvent, was incapable of accepting the assignment, and could not be effectively replaced by the plaintiff corporation in that transaction.

In *Chatham Ventures, Inc. v. Federal Deposit Insurance Corporation*, 651 F.2d 355 (5th Cir. 1981) the court was faced with a similar situation. In that case the FDIC had purchased a 97.45% interest in a security deed and promissory note from the receiver of an insolvent bank. Twenty-one (21) months after the bank had been closed the FDIC acquired the remaining 2.55% interest in the deed and note. The obligor under the note contended that the subsequent purchase of the remaining interest under the note was not accomplished pursuant to the FDIC's power under § 1823(e) and that, as a consequence, the FDIC could not collect on the remaining interest.

The court, however, rejected that argument, noting:

The purchase of the remaining 2.55% interest and the physical acquisition of the note was clearly part of a transaction entered into in aid of the FDIC's earlier purchase of an asset of an insured bank when the purchase would facilitate the transition of the bank's business to a solvent bank. The FDIC may "exercise all powers specifically granted . . . , such incidental powers as shall be necessary to carry out the powers so granted." [Citations omitted] The FDIC, then, acquired the note and the 2.55% interest in a proper use of its powers to aid the banking industry in event of a bank's insolvency. [Citations omitted] The statutory protection of section 1823(e) shields the FDIC

from defenses or claims raised with respect to "any asset acquired by it under this section." The use of incidental powers, which are necessary to carry out the specific powers of section 1823(e), is sufficient to make the acquisition in question one that was made "under this section." [Citations omitted] 651 F.2d at 359.

That result must be reached here. The FDIC, pursuant to its general powers under 1823(e), required defendants Leach and Bartneck to complete the assignment of the ORA note. The fact that the Tri-City Bank was not in existence and could not accept assignment did not affect the validity of the FDIC's right and duty to require Leach and Bartneck's signatures, inasmuch as the FDIC's right to require the signatures was independent of the existence of the Tri-City Bank. The assignment of the ORA note was clearly part of the original purchase and assumption of the Leach and Bartneck note, as one secured the other and both were contained in the appropriate records of the bank. Accordingly, the court rejects defendants' contention that the assignment of the note from Leach and Bartneck was invalid.

Defendants ORA and Henderson finally argue that neither § 1823(e) nor *D'Oench* protect the plaintiff corporation from their defense of failure of consideration, under the facts of this case. Section 1823(e) applies, according to ORA and Henderson, to prevent side or secret agreements with the bank from being asserted against the FDIC. Here, they argue not that they had a secret agreement with the bank, but that they had no agreement at all: they did not know that their note was being utilized by Leach and Bartneck to secure a loan from the bank. Accordingly, absent their knowledge of the assignment of their note, they cannot be held liable, and the defense of failure of consideration must stand.

Second, the defendants assert that under the *D'Oench* doctrine they cannot be held liable since they have not lent themselves to any scheme or arrangement likely to deceive creditors or depositors of the bank. The defendants suggest to the court that

absent their knowledge that the note was being assigned to the Tri-City Bank they could not have lent themselves to a scheme likely to mislead banking authorities. *Federal Deposit Insurance Corporation v. Timbalier Towing Company, Inc.*, 497 F.Supp. 912 (N.D.Ohio 1980).

Although this court agrees with the defendant's contention that § 1823(e) does not by its terms bar the defense of failure of consideration as a matter of law, it is clear that as maker of the collateral note ORA is liable for the note according to its tenor under *D'Oench* and its progeny. While ORA has pointed to the deposition of E. Randall Henderson to establish the undisputed fact that ORA had no actual knowledge that their note was being used as collateral to secure the note of Leach and Bartneck, it is undisputed that ORA had notice that their unpaid note might well be used for that purpose. In the earlier transaction between the parties concerning the note which this note increased and replaced, the parties executed a Memorandum agreement dated February 11, 1974, which specifically spelled out the fact that their note would be pledged to Tri-City as collateral. Among the terms spelled out was the fact that the earlier note would be used by Leach and Bartneck to obtain a loan from the Tri-City Bank to pay various land contracts entered into between the parties. The renewal of the earlier notes by the parties and the continuation of the Memorandum agreement suggest to the court that while ORA may not have had actual knowledge that their note would be used to secure the Leach and Bartneck renewal loan, they were possessed with sufficient knowledge that the note might well be used for that purpose. Thus, although they may not have dealt directly with the bank with respect to the second note, they nonetheless by their actions lent themselves to a scheme likely to mislead banking officials, and thus under *D'Oench* are liable for their note. *Timbalier Towing Co. v. Federal Deposit Insurance Co., supra.*

ORA's reliance on *FDIC v. Meo*, 505 F.2d 790 (9th Cir. 1974), is misplaced. In *Meo* the maker of the note was completely innocent of the bank's wrongful conduct, a fact critical to the court's allowance of the defense of failure of consideration. Here, ORA was not completely innocent of the underlying Leach and Bartneck understandings or transactions, wherein its note was used to secure the renewal loan. Moreover, ORA has not pointed to any conduct on the part of the bank which was wrongful in accepting the ORA note as collateral. The ORA note was complete on its face, and recited that it would pay to the parties a sum certain in the future. The note did not contain any restrictive language limiting its negotiability. Although the bank failed to list the ORA note as collateral on the Leach and Bartneck loan agreement, the note was contained in the collateral files and records of the bank as collateral for the Leach-Bartneck loan. Given ORA's conduct in executing and delivering a note complete on its face, permitting it to remain in the custody of others, and with constructive knowledge, or notice that the note might be used as collateral in accordance with established relationships, under the rationale of *D'Oench* ORA lent itself to a scheme likely to deceive banking authorities. Accordingly, this court cannot allow the defense of failure of consideration to bar the FDIC's recovery on the paper.

Accordingly, an Order of Summary Judgment shall enter for plaintiff against all defendants jointly and severally, for $75,000 as well as all unpaid interest at the rate of 13% from May 1st, 1974.

IT IS SO ORDERED.